**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-03103-STV

JILL FINAN,

      Plaintiff,

v.

DAVID HACHMEISTER; and
CARE AND COMFORT AT HOME FOR SENIORS AND VETERANS,

      Defendants.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment (the "Motion"). [#105] The parties have consented to proceed before a United States Magistrate Judge for all proceedings, including entry of a final judgment. [#20] The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED**.

## I.    BACKGROUND

This case arises out of Plaintiff's employment with Defendant Care and Comfort at Home for Seniors and Veterans ("CCSV"). [*See* #1] Plaintiff asserts three remaining claims in the Complaint: (1) age discrimination in the form of disparate treatment under

the Age Discrimination in Employment Act ("ADEA"); (2) breach of contract; and (3) promissory estoppel.[1]  [See ##1, 101]  Defendants filed a motion under Rule 56 of the Federal Rules of Civil Procedure seeking partial summary judgment on the breach of contract claim and the promissory estoppel claim.  [#105]  Plaintiff responded [#112] and Defendants replied [#119].

## II.    UNDISPUTED MATERIAL FACTS[2]

Defendant CCSV employed Plaintiff from September 2017 to May 2020.  [#118 at ¶ 1]  The employment agreement was made orally.  [*Id.* at ¶ 16]  In August 2020, Defendant CCSV filed a lawsuit against Plaintiff in state court (the "State Action").  [*Id.* at ¶ 3]  CCSV asserted claims against Plaintiff for theft of corporate funds, conversion, and other misconduct.  [*Id.* at ¶ 4]  Plaintiff filed her answer to the state suit in October 2020. [*Id.* at ¶ 5]  Plaintiff later amended her answer to assert counterclaims for non-payment of compensation and unjust enrichment against CCSV.  [*Id.* at ¶ 6]  A four-day trial was held on this state matter.  [*Id.* at ¶ 7]  CCSV and Plaintiff were both named parties in the state action through the end of the trial.  [*Id.* at ¶ 9]  A final judgment was entered in November 2021.  [*Id.* at ¶ 8]  The final judgment granted CCSV's claim for relief against Plaintiff for conversion of money for salary increases, personal (rent, utility, internet) expenses, auto expenses, health expenses, and miscellaneous "direct" payments.  [*Id.* at

---

[1] Plaintiff's claims for (1) age discrimination in the form of disparate impact under the ADEA, (2) intentional infliction of emotional distress, and (3) fraudulent inducement of employment have been dismissed.  [*See* #101]

[2] Consistent with D.C.COLO.LCivR 56.1(1), the Motion includes a statement of material facts which sets forth Defendants' proposed undisputed facts in sequentially numbered paragraphs.  [#106]  The material facts identified in this section are drawn from the summary judgment record and are undisputed unless otherwise noted.

¶ 10]  The state court also granted Plaintiff's claim against CCSV for unpaid salary under the Colorado Wage Claim Act.  [*Id.* at ¶ 11]

## III.    STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact, which the movant may do "simply by pointing out to the court a lack of evidence . . . on an essential element of the nonmovant's claim" when the movant does not bear the burden of persuasion at trial.  *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998).  If the moving party bears the burden of proof at trial, "the moving party must establish, as a matter of law, all essential elements of the [claim or affirmative defense on which summary judgment is sought] before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."  *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  In other words, the moving party "must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed verdict."  *Rodell v. Objective Interface Sys., Inc.*, No. 14-cv-01667-MSK-MJW, 2015 WL 5728770, at *3 (D. Colo. Sept. 30, 2015) (citing *Celotex Corp.*, 477 U.S. at 331).  If the movant carries its initial burden, the burden then shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial."  *Adler*, 144 F.3d at 671 (quotation omitted).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *See Anderson*, 477 U.S. at 248-49; *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). Evidence, including testimony, offered in support of or in opposition to a motion for summary judgment "must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party. *Anderson*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In reviewing a motion for summary judgment, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant." *Id.* at 1110 n.3. The Court, however, cannot be a pro se litigant's advocate. *See Yang v. Archuleta*, 525 F.3d

4

925, 927 n.1 (10th Cir. 2008). Moreover, pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

## IV.    ANALYSIS

The Court first addresses a few preliminary matters. First, it appears that Plaintiff is under the impression that this case has three Defendants: CCSV, David Hachmeister, and a satellite location of CCSV known as "Senior Caring Services, Inc." [*See* #112 at 1, 4 ("[CCSV's] satellite agency located in Elmhurst, IL [] is included as a defendant in this action.")] The Court clarifies that this case only includes two Defendants: CCSV and Mr. Hachmeister. CCSV's Elmhurst location was not named as a defendant in the Complaint [*see* #1 at 2], was never served, and has had no involvement in this case to date. Second, Plaintiff appears to assert an entitlement to "full autonomy and authority over [CCSV], family leave, . . . and severance" in her Response to the Motion. [*See* #112 at 1 (capitalization omitted)] These entitlements were not asserted in the Complaint, and the Court will not consider them here. *See Pater v. City of Casper*, 646 F.3d 1290, 1299 (10th Cir. 2011) (finding that issues raised for the first time in a motion for summary judgment can instead be construed as a request to amend the complaint (citing *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998))).[3]

---

[3] If Plaintiff intended with her Response to seek leave to amend her Complaint to assert rights to family leave and severance, the Court denies this request as futile given that the Court finds below that Plaintiff's compensation package was entirely adjudicated in the State Action. *See Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." (citations omitted)).

Defendants argue that they are entitled to summary judgment on Plaintiff's breach of contract and promissory estoppel claims because issue preclusion prohibits Plaintiff from bringing these claims, res judicata prohibits Plaintiff from bringing these claims, and these claims were compulsory counterclaims that Plaintiff failed to properly file in the State Action.  [*See* #105]  The Court begins with Defendants' argument concerning issue preclusion.

The United States Constitution contains a Full Faith and Credit Clause, which states: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial proceedings of every other State."  U.S. Const., Art. IV, § 1.  The Full Faith and Credit Clause is implemented by the Federal Full Faith and Credit Statute.  *See* 28 U.S.C. § 1738.  To comply with the Clause and the Statute, "[f]ederal courts must give to a state court judgment the preclusive effect that would be given under the law of the state in which the state court judgment was rendered."  *Ziankovich v. Large*, No. 17-cv-02039-CMA-NYW, 2019 WL 4463283, at *6 (D. Colo. Sept. 18, 2019) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

"[I]ssue preclusion, also known as collateral estoppel, presents a question of law." *Id.* at *7 (quoting *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1159 (Colo. 2013)). "Issue preclusion bars a party from relitigating [] a factual or legal issue once he has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim."  *Baldwin v. U.S.*, No. 11-cv-02033-MSK-KLM, 2012 WL 2215680, at *2 (D. Colo. June 15, 2012) (quoting *Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004)).  This doctrine applies "even when the actual claims for relief in the two proceedings are different" but

applies "only to issues actually litigated." *Franco v. City of Boulder*, No. 19-cv-02634-MEH, 2020 WL 1244855, at *3 (D. Colo. Mar. 16, 2020) (quoting *Foster v. Plock*, 394 P.3d 1119, 1123 (Colo. 2017)). Under Colorado law, issue preclusion applies when four factors have been met:

> (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the previous proceeding; (2) the party against whom estoppel is sought was a party to and was in privity with a party to the previous proceeding; (3) there was a final judgment on the merits in the previous proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the previous proceeding.

*Ziankovich*, 2019 WL 4463283, at *7 (citing *Kadingo v. Johnson*, 304 F.Supp.3d 1003, 1015 (D. Colo. 2017)).

Defendants argue that all aspects "of [Plaintiff's] agreed-upon compensation, as Agency Director for CCSV, [were] litigated in the [] State Action." [#105 at 3] Because of this, Defendants argue that Plaintiff's breach of contract and promissory estoppel claims are barred by the doctrine of issue preclusion. [*Id.* at 3-5] The Court must thus assess each of the four factors of issue preclusion.

Plaintiff alleges that her compensation package included: 30% "ownership of agency/officer's pay," salary ($55,000), a housing stipend ($52,320), health insurance ($1,438), company car and maintenance ($11,765.20), gas and tollway allowance ($6,630), car insurance ($2,586), life insurance, a home office stipend ($431), paid time off ($6,455), and a Christmas bonus ($700). [#1 at 4, 6] Plaintiff further alleges that she was not compensated according to this contract. [*Id.*] Accordingly, Plaintiff's breach of contract claim concerns these particular benefits of her employment. Additionally, Plaintiff appears to allege that she relied on the promise of these particular benefits when she

decided to take the job as CCSV and relocate to Colorado. [*Id.* at 4] The question before the Court is thus whether the state court decided the issue of benefits to which Plaintiff was entitled.

Only oral findings of fact and conclusions of law were issued in the State Action. [#106-4 at 80:4-5] And the record of these findings reflects that all issues related to the Plaintiff's compensation package were decided in the State Action. First, the Court considers Plaintiff's allegation that she was entitled to $55,000 in salary. This is notably different from the position Plaintiff took in the State Action, in which she argued that her salary was $88,000 at the end of her employment as CCSV. [*Id.* at 82:2-4] Regardless, this issue is identical to an issue that was litigated and adjudicated in the State Action. Specifically, the state court found that Plaintiff had been hired on at a salary of $45,000 and this amount was later increased to $50,200. [*Id.* at 81:9-10; 112:11-19; 113:4-10] The state court further found that CCSV did not consent to any other increase in salary. [*Id.* at 99:18-19] As a result of this fact, the state court awarded CCSV $54,609.02 worth of unapproved increases in salaries that Plaintiff took and found Plaintiff liable for conversion. [*Id.* at 100:14-16]

Second, the Court considers Plaintiff's allegation that she was entitled to a housing stipend. The state court found that Plaintiff and Defendant CCSV did not have any express agreement regarding rent payments or rent reimbursement. [*Id.* at 81:13-15] The state court thus found Plaintiff liable for conversion for the company funds that she used to make rent payments to her apartment and to her father's mortgage. [*Id.* at 101:2-11; 102:3-5]

Third, Plaintiff claims she was entitled to health insurance.  But the state court found that Plaintiff was offered health insurance and declined it.  [*Id.* at 81:11-12]  Thus, the state court found that Plaintiff was not authorized to use company funds for the purpose of medical or health insurance payments and that Plaintiff was liable for conversion for using company funds for such purposes.  [*Id.* at 104:23-105:11]

Fourth, Plaintiff claims she was entitled to various reimbursements related to her vehicle.  These include company car and maintenance, a gas and tollway allowance, and car insurance.  But the state court found that Defendant Hachmeister only agreed to reimburse for mileage and did not agree to any other auto charges.  [*Id.* at 103:7-11]  The state court characterized this reimbursement agreement as an agreement in which Plaintiff was to submit her bills with regard to mileage, and Defendant CCSV would pay at an agreed rate.  [*Id.* at 103:15-22]  The state court also specifically found that Plaintiff was not entitled to auto insurance or vehicle maintenance paid for by CCSV.  [*Id.* at 104:7-10]  And with respect to the agreed-upon mileage reimbursement, the state court found that Plaintiff did not follow the agreement, and instead sought funding in the form of a stock amount with no relationship to mileage, which was not authorized.  [*Id.* at 103:23-104:6]  As a result, the state court found that *all* of Plaintiff's auto expenses were unauthorized and that Plaintiff had thus converted $10,341.15 to her personal use without consent.  [*Id.* at 104:19-22]  Accordingly, Plaintiff's entitlement to the various vehicle related payments she claims here were issues actually decided and litigated in the State Action.

Fifth, Plaintiff seeks various other forms of compensation including ownership/officer pay,[4] life insurance,[5] a home office stipend, paid time off, and a Christmas bonus.  But the state court found that Plaintiff's contractual compensation included only salary, health insurance which Plaintiff declined, and mileage reimbursement.  [#106-4 at 81:9-15]  The state court specifically found that there was no express agreement between Defendant CCSV and Plaintiff regarding any "other kinds of payments for anything else."  [*Id.* at 81:13-15]  To the extent Plaintiff intends her "home office stipend" to include payments for home internet services, the state court explicitly found that Defendant CCSV did not consent to Plaintiff's use of company funds for the purpose of paying for home internet.  [*Id.* at 103:2-4]  The fact that Plaintiff was not entitled to any other type of compensation is further illustrated by the state court's finding that all additional direct payments made to Plaintiff, for unknown reasons, were unauthorized and constituted conversion of company funds.  [*Id.* at 105:12-106:1; *see also* #118-7 at 13]

Though Plaintiff argues that the state court did not decide the full scope of the parties' contract, ownership interests, or issues relating to paid time off, life insurance, company vehicle, overtime, bonuses, severance, and other benefits [#112 at 3], it is clear

---

[4] The evidence in the record suggests that Plaintiff, in her second term with CCSV, was given an option to purchase a 30% interest in CCSV once it became profitable.  [#118-4 at 6:1-3]  This was discussed in the State Action and it appears that Plaintiff even testified as to her entitlement to 30% ownership.  [*See id.* at 6:1-3, 79:13-18]  Nevertheless, the state court did not make any finding that Plaintiff was entitled to company ownership or any payout related to such ownership.

[5] The Court further notes that, to the extent Plaintiff seeks life insurance, her own testimony is that there was never any conversation with Defendants about life insurance as part of Plaintiff's employment package.  [#118-8 at 68:3-9]  The evidence before the Court is thus that the state court found that Plaintiff was entitled to nothing but salary, health insurance which she declined, and mileage reimbursement and that Plaintiff's own testimony is that life insurance was never discussed with Defendants in any fashion.  Plaintiff does not point to any evidence to rebut this conclusion.

from the state court's findings of fact and law that the court did consider every aspect of Plaintiff's benefits and compensation.  Plaintiff argues that the state court did not determine Defendants' contractual obligations beyond compensation and breach of contractual duties unrelated to compensation [*id.*], but Plaintiff alleges only the existence of promises and contracts concerning compensation [#1 at 4, 6].  Accordingly, issues unrelated to compensation are irrelevant.  Plaintiff also argues that the state court never litigated Defendant Hachmeister's individual liability  [#112 at 3], but Plaintiff may not re-litigate claims already decided by simply slotting in a new adversary, as the Court describes below.

The second factor of issue preclusion requires the Court to determine that Plaintiff was a party to the previous proceeding.  There is no dispute that Plaintiff was the defendant to the State Action.   [#118 at ¶ 3]  "Mutuality of parties is not necessary to the application of the doctrine of issue preclusion."  *Siemens Med. Systems, Inc. v. Nuclear Cardiology Sys., Inc.*, 945 F. Supp. 1421, 1433 (D. Colo. 1996) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979) ("*Parklane*")).  And "[f]ederal district courts have broad discretion to determine when nonmutual issue preclusion should be applied."  *Id.* (citing *Parklane*, 439 U.S. at 331).  The type of defensive issue preclusion asserted here "precludes a plaintiff from relitigating identical issues merely by 'switching adversaries,' thus 'giv[ing] a plaintiff a strong incentive to join all potential defendants in the first action if possible.'"  *Oaster Dev., LLC v. WD Consulting*, 778 F. Supp. 3d 1168, 1185 (D. Colo. 2025) (citing *Parklane*, 439 U.S. at 329-30).  This is precisely the circumstance presented in this case.  Plaintiff, who was a counterclaim plaintiff in the State Action [#118-3], is attempting to relitigate exactly the same issues she litigated in state court against CCSV,

11

who was her adversary in the State Action, and against Defendant Hachmeister, who worked for CCSV and recruited Plaintiff for the position she took at CCSV [#118 at ¶ 2]. Thus, Defendant Hachmeister is involved in this case only because of his relationship with CCSV.  The Court does not find it appropriate to permit Plaintiff to relitigate issues already determined in the State Action by switching adversaries here.  There is no alleged difference between the compensation Plaintiff would be entitled to from CCSV and the compensation Plaintiff would be entitled to from Defendant Hachmeister.  Accordingly, the Court finds that the second factor of issue preclusion is satisfied.

As to the third factor of issue preclusion, there is no dispute that there was a final judgment on the merits in the previous proceeding.  [#118 at ¶ 8]  Though Plaintiff argues again that the state court did not adjudicate the entirety of Plaintiff's contractual relationship with Defendants [#112 at 4], this argument is rejected for the reasons described in the Court's analysis of factor one.

Finally, for issue preclusion to apply to this case, the Court must find that Plaintiff had a full and fair opportunity to litigate the issues in the previous proceeding. The Court's consideration of this factor often focuses on "whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties."  *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014) (quoting *Murdock v. Ute Indian Tribe of Uintah and Ouray Rsrv.*, 975 F.2d 683, 689 (10th Cir. 1992)).  Plaintiff was represented by counsel in the State Action and filed an answer to CCSV's claim and her own additional counterclaims against CCSV.  [*See* ##106-2; 106-3; 106-4]  Plaintiff actually defended against the conversion claim and argued her

12

Colorado Wage Act claim in a four-day trial.  [#118 at ¶ 7]  In fact, Plaintiff testified at this trial and the state court considered such testimony in making its findings.  [*See*, *e.g.*, #106-4 at 91:8-93:3]  There were thus no clear procedural limitations preventing Plaintiff from litigating in the State Action and Plaintiff had a clear incentive to vigorously litigate these issues as CCSV made specific allegations related to company funds Plaintiff used for her own expenses.  Indeed, in CCSV's proposed findings of fact, CCSV requested that the Court determine Plaintiff's negotiated compensation and identified specific payments that CCSV contested, many of which are the same types of compensation that Plaintiff seeks in the present action.  [*See*, *e.g.*, #118-6 at ¶¶ 38-39, 42, 44, 49, 51, 53, 55, 58, 64]  Thus, Plaintiff was on notice and had incentive to litigate all issues related to her compensation package.  Plaintiff litigated against CCSV, who is a Defendant to this case, so there is no reason to believe that Plaintiff's litigation was rendered less effective by the nature of the relationship of the parties to the State Action.

Plaintiff argues that she was not given a full and fair opportunity to litigate because she sought certain bank records from CCSV's satellite location and that such records were excluded.  [#112 at 4]  But Plaintiff provides no reason for believing that the state court made any error in its decision to deny Plaintiff's requests related to the bank statements.  [*See also* #112-2 at 1]  Thus, it does not appear that there was any procedural defect which prevented her from litigating in the State Action.  Indeed, Plaintiff does not offer any information as to how these records would have changed her litigation approach or the outcome of the case.

Therefore, the Court agrees with Defendants that Plaintiff's breach of contract and promissory estoppel claims are barred by issue preclusion.  The Court therefore does not

consider Defendants' arguments that Plaintiff's claims are barred by res judicata or that these claims were compulsory counterclaims that Plaintiff failed to properly file. Accordingly, the Motion is GRANTED.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment [#105] is **GRANTED**.

DATED: July 24, 2026                    BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge